UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORNELL UNIVERSITY,<br><br>                                          Plaintiff,<br><br>v.<br><br>URO MEDICAL CORPORATION, a Texas Corporation,<br><br>                                          Defendant. | Civil Action No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cornell University ("Cornell"), by its undersigned counsel, by and for its Complaint against Uro Medical Corporation ("Uro Medical"), alleges as follows:

**INTRODUCTION**

1. This action arises from defendant's failure to pay a long-overdue balance of approximately $168,000 owed to Cornell under a Clinical Trial Site Agreement dated December 6, 2018 (the "Agreement"). Pursuant to the Agreement, defendant, as "Sponsor," engaged Cornell to conduct a clinical trial of certain proprietary technology of the Sponsor using resources and personnel of Cornell's Weill Cornell Medical College ("Weill Cornell"), and agreed to reimburse Cornell for start-up costs and study costs.

2. The original Sponsor under the Agreement was StimGuard LLC ("StimGuard"), but that company ceased business operations in 2020 and, upon information and belief, its assets were stripped and transferred to a successor entity, Micron Medical Corporation ("Micron Medical"). Soon afterward, Micron Medical, too, was shut down and ceased business operations, and, upon information and belief, its assets were stripped and transferred to yet another successor entity, defendant Uro Medical. Upon information and belief, the same three companies – StimGuard, Micron Medical, and Uro Medical – all operated out of the same

address and were run by the same principals, including Laura Tyler Perryman, the founder or co-founder and a key executive of each of these entities.

3. Uro Medical substituted itself for StimGuard and Micron Medical as the "Sponsor" under the Agreement and assumed the Sponsor's payment obligations to Cornell, pursuant to an amendment to the Agreement that Uro Medical entered into in August 2021. Ms. Perryman executed the amendment on behalf of Uro Medical, and sent the final fully-executed amendment to Cornell by email.

4. Representatives of Uro Medical and its predecessor entities (StimGuard and Micron Medical), including Laura Tyler Perryman, have repeatedly acknowledged the Sponsor's obligation to make payment of the overdue balance to Cornell, as detailed below. Uro Medical has nonetheless failed to pay the overdue balance.

5. Cornell is therefore commencing this action against Uro Medical to secure the payments it was promised under the Agreement.

## THE PARTIES

6. Plaintiff Cornell is a New York educational corporation chartered under Article 115 of the New York Education Law, with its principal campus located in Ithaca, New York.

7. Weill Cornell is a constituent college of Cornell, located in New York, New York.

8. Upon information and belief, defendant Uro Medical is a Texas for-profit corporation with its principal place of business at 1900 Glades Road, Ste 500, Boca Raton, Florida 33431.

9. According to Texas Comptroller of Public Accounts records, Uro Medical's Texas address for service of process purposes is 5900 Balcones Dr, Ste 100, Austin, Texas 78731.

**SUBJECT MATTER JURISDICTION, VENUE, AND PERSONAL JURISDICTION**

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c), and (d), in that a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and Weill Cornell (a constituent college of plaintiff Cornell) is located in this judicial district.

12. The Court has personal jurisdiction over defendant because StimGuard and its successor, defendant Uro Medical, entered into the Agreement with Cornell in this judicial district and in New York, and defendant Uro Medical and its predecessors (StimGuard and Micron Medical) have regularly done business in this judicial district and in New York and derived substantial revenues from services rendered in or related to New York and/or through interstate commerce. Defendant reasonably should, therefore, expect its actions to have consequences in this judicial district and in New York, and therefore to be subject to the jurisdiction of courts located in this judicial district and in New York.

13. Defendant Uro Medical and its predecessor, StimGuard, entered into the Agreement in this judicial district and in New York, based on Weill Cornell's presence in this judicial district and Cornell's status as a New York not-for-profit educational institution.

14. Defendant Uro Medical and its predecessor, StimGuard, agreed to have the Agreement governed by New York law. *See* Exhibit 1: Agreement § 13.1.

15. Upon information and belief, defendant Uro Medical and its predecessors, StimGuard and Micron Medical, have conducted business with other New York-based entities.

3

16. Based on the above, and upon information and belief, Uro Medical and its predecessors, StimGuard and Micron Medical, have regularly conducted business in this judicial district and in New York, sell or offer to sell their products and services in New York, and have engaged in continuous commercial and business activities with persons and entities located in this judicial district and/or in New York, including without limitation with Cornell, all of which activities are directly related to the subject matter of the Agreement. These regular and continuous business and commercial contacts with this judicial district and with New York arose in connection with both the specific activities related to the Agreement at issue and under the general business and commercial activities of Uro Medical and its predecessors, StimGuard and Micron Medical, all of which substantially relate to New York State.

## BACKGROUND FACTS

**CORNELL ENTERS INTO THE CLINICAL TRIAL SITE AGREEMENT WITH THE SPONSOR (STIMGUARD AND LATER URO MEDICAL)**

17. On or about December 6, 2018, Cornell, StimGuard, and non-party The New York and Presbyterian Hospital (currently known as NewYork-Presbyterian Hospital) entered into a Clinical Trial Site Agreement (as previously defined, the "Agreement"), whereby StimGuard engaged Cornell to conduct a clinical trial of certain proprietary technology of StimGuard's using resources and personnel of Cornell's medical college, Weill Cornell, and agreed to reimburse Cornell for start-up costs and study costs. A copy of the Agreement (together with all three amendments thereto) is attached hereto as **Exhibit 1**.

18. Pursuant to the Agreement, StimGuard, and later its successor, Uro Medical, as the "Sponsor," engaged Cornell to conduct a clinical trial of the Sponsor's proprietary technology. Cornell agreed to provide resources and personnel of its medical college, Weill Cornell, in exchange for the Sponsor's agreement to reimburse Cornell for start-up costs and

study costs.

  19.  In particular, the Agreement provides as follows:

> Sponsor will compensate Site [*i.e.*, Cornell] for services provided up through effective date of termination of this Agreement and for any services provided after termination that are necessary to safeguard Subject safety or to comply with applicable laws, rules, regulations, or Sponsor's requirements, all in accordance with the budget and schedule in Exhibit A. Site will return any unused refundable advances promptly after invoice by Sponsor. Sponsor will pay Site for all reasonable non-cancelable obligations properly incurred for the Study by Site prior to termination.

Ex. 1: Agreement § 11.4.

  20.  Pursuant to Section 11.5 of the Agreement, titled "Survival," Section 11 of the Agreement "will remain in full force and effect following termination or expiration of th[e] Agreement."

  21.  Exhibit A of the Agreement sets forth further provisions for the Sponsor's compensation obligations to Cornell.

  22.  Section 1.1 of Exhibit A, titled "Budget," provides as follows, in relevant part: "Sponsor will pay Site [*i.e.*, Cornell] in accordance with the fee schedule in Exhibit A (Budget). This includes costs related to device purchase and procedural costs of the control device . . . ."

  23.  Section 1.2 of Exhibit A, titled "Payee," provides that all payments by the Sponsor are to be made by check to Weill Cornell, to the attention of its Joint Clinical Trials Office.

  24.  Section 1.3 of Exhibit A, titled "Payment Terms and Invoicing," provides as follows, in relevant part:

> Sponsor will pay site [*i.e.*, Cornell] based on a single invoice on a quarterly basis for subject visit payments. All administrative costs and subject related invoiceables will be submitted by site by invoice. <u>Payment shall be due within 30 days after receipt of invoice.</u>

> Sponsor shall reimburse Site not more often than monthly for allowable costs. All invoices shall be submitted using site's standard invoice, but at a minimum shall include current and cumulative costs, and certification as to truth and accuracy of invoice. Invoices and questions concerning invoice receipt or payment should be directed to the appropriate party's contact as shown in section 12.2.
>
> Sponsor or its designee will perform a reconciliation of the Institutions account and submit to Institution for review and approval to jctofinance@med.cornell.edu before issuing a final payment to the Institution accounting for all previous Study payments and any remaining payments. . . .

(Emphasis added.)

25. The Agreement was amended three times. As detailed below, pursuant to Amendment No. 2 to the Agreement, dated August 23, 2021 ("Amendment No. 2"), defendant Uro Medical was substituted as the "Sponsor" under the Agreement in place of StimGuard, and Uro Medical assumed StimGuard's payments obligations to Cornell under the Agreement.

26. The Agreement provides that it is "binding upon" any successors of StimGuard. In particular, Section 13.6 of the Agreement provides: "This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, legal representatives, successors and permitted assigns."

## THE SPONSOR'S BREACH OF THE CLINICAL TRIAL SITE AGREEMENT

27. In approximately January 2019, Weill Cornell sent StimGuard invoice #1803019094, dated January 14, 2019, requesting payment of a startup fee and other costs totaling $18,000 (the "January 2019 Invoice"). A copy of the January 2019 Invoice is attached as **Exhibit 2**.

28. Payment on the January 2019 Invoice was due on February 13, 2019, 30 days after the date of the invoice, pursuant to the terms of the Agreement.

6

29. StimGuard and its successors failed to pay the amount due on the January 2019 Invoice by the February 13, 2019 deadline or at any time since then.

30. In approximately April 2021, Weill Cornell sent StimGuard invoice #1803019094-SA1, dated April 20, 2021, requesting payment of study costs totaling $149,966.26 (the "April 2021 Invoice" and, together with the January 2019 Invoice, the "Invoices").  A copy of the April 2021 Invoice is attached as **Exhibit 3**.

31. Payment on the April 2021 Invoice was due on May 20, 2021, 30 days after the date of the invoice, pursuant to the terms of the Agreement.

32. StimGuard and its successors failed to pay the amount due on the April 2021 Invoice by the May 20, 2021 deadline or at any time since then.

33. Together, the amounts due on the Invoices total $167,966.26.

34. StimGuard, and its successor Uro Medical, agreed to pay such amounts to Cornell pursuant to the Agreement (including Amendment No. 2 thereto).

35. Uro Medical, as the successor to StimGuard and "Sponsor" pursuant to Amendment No. 2, is liable to Cornell for the Sponsor's breaches of the Agreement.

**AFTER STIMGUARD AND MICRON MEDICAL ARE SHUT DOWN, URO MEDICAL IS SUBSTITUTED AS THE SPONSOR UNDER THE AGREEMENT AND ASSUMES THE SPONSOR'S CONTRACTUAL LIABILITIES TO CORNELL**

36. Upon information or belief, StimGuard, the original Sponsor under the Agreement, ceased business operations in or about April 2020, and its assets were stripped and transferred to a successor entity, Micron Medical, a Delaware corporation incorporated on March 3, 2020.  Soon afterward, Micron Medical, too, was shut down and ceased business operations, and, upon information and belief, its assets were stripped and transferred to yet another successor entity, defendant Uro Medical.

37. Upon information and belief, the same three companies – StimGuard, Micron Medical, and Uro Medical – all operated out of the same address and were run by the same principals, including Laura Tyler Perryman, the founder or co-founder of each of the companies.

38. Uro Medical is the only one of the three companies that still remains in business with a functioning website.

39. Internet traffic to StimGuard's old website, stimguard.com, now redirects to Uro Medical's website, uromedical.com.

40. Florida Department of State records reflect that StimGuard ceased operating in Florida as of 2020.  A Certificate of Withdrawal of Authority to Transact Business in Florida was filed on the Florida Department of State's website, dated April 30, 2020, signed by Ms. Perryman, stating that StimGuard "is withdrawing its certificate of authority in this state."

41. On or about April 3, 2020 (approximately four weeks prior to StimGuard's filing of the certificate of withdrawal), StimGuard issued a press release announcing it was "changing its corporate name to Micron Medical Corporation."  As of the date of this complaint, the press release is available at the following URL:  https://www.biospace.com/article/releases/stimguard-announces-corporate-name-change-to-micron-medical-and-appointment-of-ceo-as-part-of-expansive-executive-management-teammicron-medical-expects-u-s-commercial-launch-of-protect-pns-for-treatment-of-overactive-bladder-in-q3-2020/.

42. According to Florida Department of State records, Micron Medical was authorized to transact business and conduct affairs in Florida on December 16, 2020.

43. Upon information and belief, Micron Medical in turn soon also ceased operations, and its assets were stripped and acquired by yet another successor entity, defendant Uro Medical, as confirmed in a July 6, 2021 press release on Uro Medical's website with the title, "<u>Uro</u>

Medical Corporation Acquires Micron Medical and Initiates the FDA IDE Approved 'Guardian' RCT of the Protect PNS Injectable Tibial Stimulator for Treatment of Overactive Bladder[.]" (Emphasis added.)  As of the date of this complaint, the press release is available at the following URLs:

>https://uromedical.com/in-the-news

>https://www.globenewswire.com/news-release/2021/07/06/2258191/0/en/Uro-Medical-Corporation-Acquires-Micron-Medical-and-Initiates-the-FDA-IDE-Approved-Guardian-RCT-of-the-Protect-PNS-Injectable-Tibial-Stimulator-for-Treatment-of-Overactive-Bladder.html

44. According to Florida Department of State records, Micron Medical filed an "Application by Foreign Corporation for Withdrawal of Authority to Transact Business or Conduct Affairs in Florida" with the Florida Department of State on January 8, 2022, which states, in part:  "The corporation is no longer transacting business or conducting affairs within the State of Florida and hereby withdraws its certificate of authority in Florida."  As of the date of this complaint, the document is available at the following URL:

>https://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2022%5C0110%5C79285077.tif&documentNumber=F20000005686

45. According to Florida Department of State records, Uro Medical was incorporated as a Texas for-profit corporation on or about June 15, 2021.  This is reflected in an "Application by Foreign Corporation for Authorization to Transact Business in Florida" filed by Uro Medical with the Florida Department of State, which, as of the date of this complaint, is available at the following URL:

>https://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2021%5C0713%5C69208679.Tif&documentNumber=F21000003800

46. In its filing, Uro Medical requested that the following email address be used for

report notifications: laura@uromedical.com. Upon information and belief, that is Laura Tyler Perryman's email address.

47. On or about July 29, 2021, the Sponsor sent Weill Cornell a letter, dated July 21, 2021, in which the Sponsor informed Weill Cornell of "the sponsor's company name change." The Sponsor stated in its letter: "Micron Medical Corporation will be doing business as 'DBA' Uro Medical Corporation." A copy of the letter is enclosed as **Exhibit 4**.

48. Soon after it was incorporated, Uro Medical entered into Amendment No. 2 with Cornell, dated August 23, 2021, whereby Uro Medical was substituted as the Sponsor under the Agreement in place of its predecessor entities, StimGuard and Micron Medical, and assumed the Sponsor's payment obligations to Cornell under the Agreement.

49. Amendment No. 2 provides, in relevant part:

> The Sponsor company name has changed from Micron Medical Corporation to Uro Medical Corporation, a Delaware corporation, whose address [is] 1900 Glades Road Suite 500 Boca Raton, FL 33431[.]
>
> All references to Sponsor in the Agreement shall now refer to Uro Medical Corporation.
>
> This document acts as a revision to Exhibit A "Compensation Form" of the original agreement. . . .

*See* Ex. 1 at Amendment No. 2.

50. Although Agreement No. 2 states that Uro Medical is a "Delaware corporation," it is actually, upon information and belief, a Texas corporation, as reflected in a July 1, 2021 filing with the Florida Department of State attaching the corporation's Certificate of Filing dated June 11, 2021, and as reflected in Texas Comptroller of Public Accounts records.

51. Laura Tyler Perryman signed Amendment No. 2 on behalf of Uro Medical, as its Chief Operating Officer. Shanice Saunders also signed Amendment No. 2 on behalf of Uro

10

Medical, as its Clinical Project Director. Ms. Perryman sent the fully-executed Amendment No. 2 to Cornell in an email dated August 23, 2021, a copy of which is attached (together with the email's two attachments) as **Exhibit 5**.

### THE SPONSOR'S REPEATED ACKNOWLEDGMENTS OF ITS OBLIGATION TO MAKE PAYMENT ON THE INVOICES AND FALSE PROMISES TO PAY THE OUTSTANDING BALANCE

52. Representatives of StimGuard (the original Sponsor under the Agreement) and its successor entities, Micron Medical and defendant Uro Medical (which was substituted for StimGuard as the Sponsor pursuant to Amendment No. 2), including Laura Tyler Perryman, have repeatedly acknowledged the Sponsor's obligation to pay the amounts due on the Invoices. Defendant has nonetheless failed to comply with its contractual obligations.

53. As detailed below, Laura Tyler Perryman, who upon information and belief is the founder or co-founder and a key executive of StimGuard and each of its successors, and other representatives of the Sponsor made various excuses for the Sponsor's failure to make payment of the overdue balance, including the COVID-19 pandemic and financial difficulties. At one point, as detailed below, Ms. Perryman even falsely represented that her company had paid the $18,000 balance due under the January 2019 Invoice, when in fact it had not, and has not, been paid.

54. After StimGuard (the original Sponsor) failed to pay the $18,000 balance due under the January 2019 Invoice by the February 13, 2019 deadline, Cornell sent StimGuard an email on February 19, 2019.

55. On that same date, Ms. Perryman responded to Cornell's email on behalf of the Sponsor to request wire transfer information: "We will need your ACH information to get these funds released to you. Can you send that over."

11

56. In response, Cornell informed Ms. Perryman that payments by check were preferred, and provided the mailing address for payment. Cornell sent follow-up emails after receiving no response.

57. On March 19, 2019, Ms. Perryman finally responded, stating in an email: "We will get it out this week!"

58. After payment still had not been received, Cornell sent further follow-up emails in March and April 2019.

59. In an email on April 10, 2019, Ms. Perryman finally responded, requesting Cornell's "ACM information" (*i.e.*, information regarding an account to which to make a wire transfer).

60. In response, Cornell again reminded Ms. Perryman that it preferred that payment be made by check.

61. On April 11, 2019, Ms. Perryman responded: "Understand we will work on getting bank checks then to send this out next week!!"

62. After Weill Cornell sent further follow-up emails in April and May 2019, Ms. Perryman finally responded on May 15, 2019, asking: "Can we please have your ACH information to remit the funds?"

63. On May 17, 2019, Erin Valin sent Cornell the following email, in which she was identified as an executive administrative assistant of Stimwave Technologies Incorporated (another Perryman-founded company): "Hello, I'm reaching out on behalf of Stimwave [sic] for your ACH information so that we may send our startup Fee. Let me know if you need anything else on my end. Thanks!"

64. Weill Cornell responded on the same date by noting that, per the Agreement,

payment of the invoice was required by check.

65. Later that same date, Ms. Perryman responded: "This company doesn't have any checks so that's probably going to be a problem[.]"

66. On June 7, 2019, Cornell sent Ms. Perryman and Ms. Valin an email asking why StimGuard had agreed to make payments via check when the company was unable to process check payments. Cornell noted that StimGuard would have to request an amendment of the Agreement to allow for payments by wire transfer.

67. After further email exchanges in which Ms. Perryman refused to remit payment via check, despite the terms of the Agreement, Cornell ultimately consented to allow for payment via ACH wire transfer in the hopes of receiving payment of the overdue balance. In an August 16, 2019 email, Weill Cornell stated: "Hi Laura, We will accept payment via ACH for the attached and understand that no transaction fees should be incurred. Please see our account information below. Can you please confirm once payment is remitted?" Weill Cornell sent a follow-up email on August 29, 2019 after receiving no response or payment.

68. In an August 29, 2019 email, Ms. Perryman wrote: "Yes it was done by ACH so we do not have a confirmation reference."

69. Ms. Perryman's statement that payment of the $18,000 overdue balance had been "done by ACH" (*i.e.*, via wire transfer) was false, as the Sponsor itself later confirmed. The Sponsor never paid the overdue balance, whether by check, wire transfer, or any other method.

70. Cornell sent Ms. Perryman multiple follow-up emails requesting confirmation that the wire transfer had been made, as there was no record of any such payment having been made in Cornell's records, including emails on August 29, September 18, October 14, October 17, October 31, and November 13, 2019. Ms. Perryman never responded to any of these emails.

71. Finally, on January 16, 2020, the Sponsor responded. Shanice Saunders, identified in the email as StimGuard's Clinical Study Specialist, wrote: "I followed up again to see if we have any updates on the invoices. I'll let you know once I hear anything back!"

72. In a meeting with Weill Cornell representatives during the week of February 3, 2020, StimGuard's Shanice Saunders informed Weill Cornell that StimGuard was looking into the matter. This is reflected in a February 4, 2020 email from Cornell to Ms. Saunders and another StimGuard representative stating: "During our meeting earlier this week, Shanice told me that you are actively looking into this. Please let us know if you need any additional information or if there are ways we can help resolve this issue. . . ." Weill Cornell sent further follow-up emails on February 14 and February 20, 2020.

73. In a conversation with a Cornell representative on February 20, 2020, Pamela Beidleman, a finance officer of StimGuard (and later Uro Medical), confirmed that the Sponsor had not actually made payment on the overdue invoice, despite what Ms. Perryman had written in her email on August 29, 2019. Ms. Beidleman stated, however, that payment would be processed the next day.

74. This is reflected in a February 20, 2020 email from Weill Cornell to Ms. Beidleman and others at StimGuard stating: "Hi Pam, Thank you for speaking with me earlier. Confirming as discussed that payment was not previously processed for the attached, and that payment via ACH now should be processed by tomorrow morning. Please send us confirmation details when possible for our Accounting department's reference." Ms. Beidleman confirmed this in her response email, in which she wrote: "You got it!"

75. Cornell sent further follow-up emails on February 25, March 5, and March 17, 2020. StimGuard's Pamela Beidleman finally responded on March 23, 2020, writing: "We have

all intentions of getting our invoices paid and are working our way through the covid 19 issues. I will let you know when we have sent the ACH payment[.]"

76. Despite the Sponsor's promises to pay the overdue balance, payment was never made.

77. Cornell sent a further follow-up email on November 18, 2020.

78. On November 25, 2020, Cornell received a response from Sherri Costa, who was identified in the email as the Accounting Manager for Micron Devices LLC. Ms. Costa stated in her email: "We are still experiencing some financial difficulties that we are working on. We have every intention of paying these invoices. I will get back to you as soon as I have more information for you. I appreciate your understanding and patience in this matter."

79. Cornell sent a follow-up email on March 19, 2021, to which it received no response.

80. On April 20, 2021, Weill Cornell sent the Sponsor the April 2021 Invoice. Weill Cornell also noted in its email that the January 2019 Invoice was by then long past due.

81. On April 21, 2021, Weill Cornell received an email response from Melanie Amtmann, identified in the email as the Accounts Payable Manager for Stimwave Technologies Incorporated, asking that Stimwave not be copied on any invoices to StimGuard. Ms. Amtmann identified two other emails to which such invoices should be sent: laura@stimguard.com (the email address for Ms. Perryman) and info@micronmed.com.

82. Weill Cornell sent several more follow-up emails regarding the overdue Invoices to Ms. Perryman and others at the Sponsor.

83. In June 2021, a representative of Micron Medical (the successor to StimGuard, the original Sponsor) finally responded. In a phone conversation with a Weill Cornell

representative on or about June 23, 2021, the Sponsor's chief financial officer, Pamela Beidleman, offered to make scheduled payments to cover the outstanding balance. Despite this offer, the Sponsor failed to make any payments on the overdue balance.

84. As noted above, in July 2021 the Sponsor sent Weill Cornell notice of its "company name change" to Uro Medical, and in August 2021, Uro Medical entered into Amendment No. 2, in which Uro Medical was substituted for StimGuard and Micron Medical as the Sponsor under the Agreement and assumed the Sponsor's payment obligations to Cornell.

85. Uro Medical nonetheless never made any payments to Cornell on the overdue balance.

**CORNELL'S NOTICE OF BREACH AND FINAL DEMAND FOR PAYMENT**

86. Cornell has advised defendant of its breaches of the Agreement and demanded that defendant pay the amounts owed under the Agreement, including in a letter sent to defendant dated December 20, 2021.

87. Nonetheless, despite defendant's clear contractual obligation to reimburse Cornell for the costs and expenses of the clinical trial, and despite repeated acknowledgements by defendant's representatives of its obligation to pay the overdue balance, defendant has not paid the amounts owed to Cornell.

88. In email correspondence with Cornell representatives in January and February 2022, Laura Tyler Perryman, a founder or co-founder and key executive of Uro Medical, using an "@uromedical.com" email address, refused to pay the overdue balance.

89. In one of her emails to Cornell, Ms. Perryman suggested that her current company, Uro Medical, did not have any contractual liability to Cornell for the amounts due under the Invoices, stating: "There is no one with an on-going obligation to Cornell." Ms.

Perryman's statement was false: Uro Medical, which remains in business, was substituted as the Sponsor under the Agreement and assumed the Sponsor's payment obligations to Cornell pursuant to Amendment No. 2. In fact, Ms. Perryman herself executed Amendment No. 2 on Uro Medical's behalf as its Chief Operating Officer and sent it to Cornell via email, as noted above. Even if Uro Medical had not executed Amendment No. 2, it would still be liable for StimGuard's contractual obligations to Cornell as the successor to StimGuard, the original Sponsor under the Agreement.

90. Ms. Perryman also stated in an email to Cornell that the "data for the subjects conducted at Cornell has not been released to the staff" of her companies. That statement, too, was false: Cornell fully complied with all of its obligations under the Agreement, including providing research data to the Sponsor pursuant to the terms of the Agreement.

91. Ms. Perryman also stated in an email to Cornell that she believed the Sponsor had paid the $18,000 balance due under the January 2019 Invoice. In fact, no such payment was ever made, as even the Sponsor's chief financial officer confirmed.

92. In later emails, Ms. Perryman finally acknowledged that Uro Medical was, indeed, contractually obligated to make payment of the overdue balance to Cornell. But Ms. Perryman began making a different excuse for why her company supposedly could not make payment: it did not have enough money. Ms. Perryman promised, however, that the company was working on obtaining more financing. In a March 8, 2022 email, Ms. Perryman represented that it may take "45-60" days to obtain the necessary financing (*i.e.*, from approximately April 22, 2022 to May 7, 2022).

93. Despite Ms. Perryman's acknowledgement of her company's payment obligation to Cornell and promise to obtain sufficient financing to make the required payments, Uro

17

Medical has still not paid any part of the overdue balance, which has necessitated the filing of this lawsuit.

## COUNT I

(Breach of Contract)

94. Cornell repeats and realleges the foregoing allegations as though they were fully set forth herein.

95. The Agreement constitutes a legally binding and enforceable contract.

96. Cornell has complied with each of its obligations under the Agreement.

97. Cornell has satisfied and fulfilled all conditions precedent to the assertion of this cause of action.

98. By reason of the conduct alleged above, defendant Uro Medical has breached the Agreement.

99. In particular, as detailed herein, defendant Uro Medical, the Sponsor under the Agreement pursuant to Amendment No. 2, failed to pay amounts due to Cornell on the Invoices totaling $167,966.26.

100. Uro Medical's conduct constitutes material breaches of the Agreement.

101. Uro Medical's breaches of the Agreement have damaged Cornell, depriving Cornell of monies due and owing to it under the Agreement, for which Uro Medical is liable to Cornell.

102. The damages caused by Uro Medical's breaches are presently believed to exceed $167,966.26, plus interest, with the exact amount to be proven at trial.

## COUNT II

### (Successor Liability)

103. Plaintiff realleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

104. Upon information and belief, as alleged in further detail above, StimGuard has been shut down and its business operations ceased, and its assets were stripped and transferred to, and its liabilities were assumed by, successor entities Micron Medical and, in turn, Uro Medical.

105. Upon information and belief, Micron Medical is a mere continuation of StimGuard, and Uro Medical is, in turn, a mere continuation of StimGuard and Micron Medical.

106. Uro Medical substituted itself for StimGuard and Micron Medical as the Sponsor under the Agreement, and assumed the Sponsor's liabilities to Cornell under the Agreement, by executing Amendment No. 2 to the Agreement.

107. The Agreement also provides that it "shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, legal representatives, successors and permitted assigns." Ex. 1: Agreement § 13.6.

108. As a result of the foregoing, Uro Medical is a successor entity of StimGuard and is responsible for StimGuard's liabilities, including StimGuard's contractual liabilities to Cornell under the Agreement.

## JURY DEMAND

109. Cornell demands a jury trial on all issues so triable.

**WHEREFORE**, Cornell seeks judgment as follows:

(1) All monetary and equitable remedies available under applicable law for

defendant's breaches of contract, plus interest; and

      (2)    Such other and further relief as the Court deems just and proper.

Dated:    New York, New York
             May 9, 2022

                                             Respectfully submitted,

                                             /s/ Mark Siegmund
                                             Mark Siegmund
                                             Associate General Counsel
                                             OFFICE OF GENERAL COUNSEL
                                             Weill Cornell Medicine
                                             445 East 69th Street, Suite 405
                                             New York, New York 10021
                                             (212) 746-0463
                                             mas4038@med.cornell.edu

                                             Attorneys for Plaintiff Cornell University